SOUTH CENTRAL BELL TELEPHONE
COMPANY, Plaintiff-Appellant,

v.

Martha B. OLSEN, Commissioner of
Revenue, State of Tennessee,
Defendant-Appellee.

Supreme Court of Tennessee,
at Nashville.

April 23, 1984.

Raymond Whiteaker, Jr., W.W. Berry, Nashville, for plaintiff-appellant.

Gregory L. Nelson, Asst. Atty. Gen., for defendant-appellee; William M. Leech, Jr., Atty. Gen. & Reporter, of counsel.

F. Allan Kelley, Kingsport, John W. Kelley, Nashville, amicus curiae.

1.  Formerly Item Q, T.C.A. § 67–4102.

2.  Formerly Item H, T.C.A. § 67–4102.

## OPINION

HARBISON, Justice.

This revenue case involves the tax base for the state gross receipts tax on telephone and telegraph companies levied in T.C.A. § 67–4–407.[1]

A brief amicus curiae has also been filed on behalf of a public utility subject to the gross receipts tax levied in T.C.A. § 67–4–406.[2] Other telephone companies than appellant are also represented by amici curiae.

The specific issue is whether or not amounts collected by these companies as retail sales taxes are properly includable as "gross receipts" under the definition of that term contained in T.C.A. § 67–4–301 as follows:

> "(a) 'Gross receipts' for the purpose of taxes administered under this part shall mean total receipts before anything is deducted ...."[3]

The only credit allowed against the gross receipts taxes involved here is for taxes imposed under the state's general corporate excise and franchise tax laws. In effect, however, appellant requests exemption or deduction from the tax base of the amounts collected as retail sales taxes.

No such deduction is provided in the statutes, nor are there deductions permitted for any other taxes except the credit for franchise and excise taxes referred to above. It is not insisted on behalf of appellant that it is entitled to deduct from its gross receipts tax base the amounts which it is required to pay in property taxes, privilege taxes, inspection fees and the like. It bases its claim for a deduction or exclusion for retail sales taxes primarily upon the basis that it is entitled to "pass through" those taxes to its customers and that such tax receipts do not constitute "gross receipts" derived from the telephone or utility business.

3.  There is an exception as to "incidental businesses" specially defined in the statute, but there is no claim that this exception has application in the present case.

The Chancellor held that the deduction was not authorized and that sales taxes were part of the gross receipts of appellant under the applicable statutes. We affirm his decision.

Appellant bases its contention primarily upon the case of *Madison Surburban Utility District of Davidson County v. Carson,* 191 Tenn. 300, 232 S.W.2d 277 (1950). In that case the statute under which the taxpayer was organized as a municipal corporation exempted the "property and revenue" of a utility district from all state, county and municipal taxation.

In view of this special statutory exemption, the Court held that the taxpayer utility district was entitled to a refund of state sales and use taxes, since the "practical effect and operation" of the taxing statute was to levy a "direct tax on the revenue of the appellant . . . ." 191 Tenn. at 307–308, 232 S.W.2d 277.

In the course of its opinion, however, the Court recognized the general rule that:

"The Sales Tax and Use Tax are both privilege taxes. The sales tax imposes upon the seller a tax for the privilege of selling tangible personal property and is required to be paid by the seller. *Hooten v. Carson,* 186 Tenn. 282, 283, 209 S.W.2d 273." 191 Tenn. at 306, 232 S.W.2d 277.

■ The latter holding is consistent with many other revenue decisions to the effect that the legal incidence of the retail sales tax is upon the vendor of the taxable services or property, and not upon the vendee or consumer. *Serodino, Inc. v. Woods,* 568 S.W.2d 610, 613 (Tenn.1978); *Central Transportation Co. v. Atkins,* 202 Tenn. 512, 517, 305 S.W.2d 940 (1957), *cert. denied,* 355 U.S. 913, 78 S.Ct. 343, 2 L.Ed.2d 274 (1958); *Smokey Mountain Canteen Co. v. Kizer,* 193 Tenn. 598, 602, 247 S.W.2d 69 (1952).

In the *Smokey Mountain Canteen Co.* case just cited, the incidence of the tax upon the vendor was dramatically illustrated. The vendor there engaged in the sale of candy, soft drinks, chewing gum and peanuts through vending machines for small amounts. The amount of each purchase was such that the vendor was not able to shift the economic burden of the tax to the consumer, as authorized by the retail sales tax statutes. Nevertheless the vendor was held liable for the sales taxes upon its products even though there was no way that it could recoup the amount thereof from its customers.

■ There is no question that appellant is engaged in making sales within the meaning of the Retailers' Sales Tax Act as defined in T.C.A. § 67–6–102(13)(F)(iii). Appellant does not question that it is a "dealer making sales" for purposes of the statute, T.C.A. § 67–6–501, nor that the sales tax is imposed upon such a dealer.

Clearly T.C.A. § 67–6–502 permits the retailer to collect the tax "from the consumer insofar as it can be done." T.C.A. § 67–6–502. As stated in the *Smokey Mountain Canteen Co.,* case, *supra,* however:

"This provision for the shifting of the tax ... does not and cannot alter the fact that 'it is a privilege tax levied upon the merchant.' " 193 Tenn. at 603, 247 S.W.2d 69.

Appellant points out that when the gross receipts tax was originally enacted in 1937, the state did not have a retail sales tax. That tax was first imposed in 1947, but it was not made applicable to telephone companies until 1963. *See* 1963 Tenn.Pub. Acts, ch. 38. It is therefore contended that the General Assembly did not intend that retail sales tax receipts be included within the term "gross receipts" as defined in T.C.A. § 67–4–301.

■ There is no legislative history available in this connection, but, as previously pointed out, the General Assembly has authorized no deduction or credit against the gross receipts tax except for franchise and excise taxes. It would be difficult to draft a broader definition than "total receipts before anything is deducted," and we do not believe that the courts can authorize a

deduction not granted by the General Assembly.

■■■ It is pointed out that for many years the Department of Revenue did not require inclusion of sales tax receipts in the gross receipts tax base, but it is recognized by appellant that the State and its taxing authorities are not subject to the rules of estoppel in administering the revenue laws. *See Memphis Shoppers News, Inc. v. Woods,* 584 S.W.2d 196 (Tenn.1979); *Carr v. Chrysler Credit Corp.,* 541 S.W.2d 152 (Tenn.1976). While prior administrative interpretations or administrative silence concerning the application of tax statutes may be persuasive when the meaning of taxing statutes is doubtful, they are not controlling when the statutory language is unambiguous, as in the present case.

■■■ Appellant insists that it simply collects the state sales taxes as a revenue agent on behalf of the state, retaining a small amount thereof as compensation for its services in doing so. It concedes that the small amount which it is permitted to retain constitutes a "gross receipt" within the meaning of the gross receipts tax law, but insists that the balance which it remits to the state should not be included. We find this argument unpersuasive for the reasons already stated; that is, that the tax is levied upon the vendor, and only incidentally is the economic burden thereof passed on to the vendee. Even if both the vendor and the vendee should be considered to be exercising a taxable privilege in the making of a sale and in the purchase of a product, the primary liability still rests upon the vendor. It is not permitted to engage in the business of making sales or the furnishing of services without collecting the sales tax and is liable for its failure to do so.

■■■ We do not find controlling the fact that appellant keeps the sales tax revenues which it collects in a separate account for accounting purposes or that other departments of state government do not require inclusion of sales taxes for various purposes, such as the computation of other taxes or the fixing of tariffs. All parties have cited various rules of statutory construction and interpretation, relating to strict construction of taxing statutes in the first instance and narrow construction of exemption therefrom in the second. We do not believe that the definition of "gross receipts" under T.C.A. § 67–4–301 is ambiguous so as to require resort to rules dealing with the construction of unclear statutes.

■■■ Numerous cases from other states have been discussed by the parties in their comprehensive briefs. Each case, however, necessarily turns upon the language of particular taxing statutes. Revenue decisions from other jurisdictions therefore are less persuasive than those in other contexts. It is certainly not without precedent, however, that a statutory definition of gross income or gross receipts may include amounts collected as taxes. *See State Tax Commission v. Quebedeaux Chevrolet,* 71 Ariz. 280, 226 P.2d 549 (1951) ("gross income" for tax purposes held to include a two percent excise tax even though tax was separately itemized in billing to customers).

Appellant correctly points out that that case involved the method of computing a single tax rather than including one tax within the base of another. However, many of the same arguments advanced by appellant in the present case were considered and rejected by the Court there.

The Arizona taxing statute defined "gross income" as

"... the gross receipts of a taxpayer derived from trade, business, commerce or sales and the value proceeding or accruing from the sale of tangible personal property, or service, or both, and without any deduction on account of losses; ..." 226 P.2d at 551.

There were also broad definitions of "gross receipts" and "gross proceeds of sale." Under these the Court held that in computing the tax base, the two percent tax itself on the base sales price must be included; that is, if an item sold for $3000, with a tax of $60, then the "gross income"

of the seller would be $3060 upon which the tax must be paid.

The taxpayer argued, as does appellant here, that it was being subjected to a "tax on a tax." It urged that it was not engaged in "selling taxes" and that any taxes collected by it were "not part of the gross income from the business." It insisted that it was not actually a taxpayer but that it "merely collects the tax from the customer and remits it to the commission, i.e., plaintiff is merely a tax collector for the state ...." 226 P.2d at 551. The Court rejected all of these contentions and found that the broad statutory definitions supported the tax commission's interpretation.

The Court said:

"As to plaintiff's not being in the business of selling taxes, it obviously is true that plaintiff is engaged only in the business of selling tangible personal property, and the commission does not contend otherwise. It likewise is true that the tax in question here is no different from rent, utilities, ad valorem taxes, or wages (which plaintiff likewise is not selling) in that it constitutes part of the over-all cost of operation which must be considered when plaintiff fixes the selling price of the tangible personal property which it does sell. *Each item considered in setting the ultimate selling price, including the tax now in question, is paid by the consumer solely to get the goods.* The tax therefore is part of the purchase price, and this price which is paid to get the goods which plaintiff does sell constitutes gross income on each transaction." 226 P.2d at 552.

There are a number of similar decisions in other states. *See e.g., Vause & Striegel v. McKibbin,* 379 Ill. 169, 39 N.E.2d 1006 (1942).

There are also numerous cases holding that amounts collected and remitted as taxes are properly included as part of the tax base for other taxes. *E.g., Martin Oil Services v. Dept. of Revenue,* 49 Ill.2d 260, 273 N.E.2d 823 (1971). There it was held that a federal excise tax upon producers of

gasoline was part of the tax base for an occupation tax upon persons selling petroleum products; a contrary interpretation by taxing authorities from 1935 until 1962 was held not to be controlling. *See also Gurley v. Rhoden,* 421 U.S. 200, 95 S.Ct. 1605, 44 L.Ed.2d 110 (1975) (federal gasoline excise tax and state gasoline excise tax held to be part of "gross proceeds of the retail sales" for purposes of state sales tax.) In both of these cases the legal incidence of the taxes sought to be deducted was upon the taxpayer, not upon the purchaser or consumer.

In the case of *Pure Oil Co. v. State,* 244 Ala. 258, 12 So.2d 861 (1943) a privilege tax was levied upon wholesalers, measured by "gross sales." The taxpayer sought to deduct federal and state excise taxes and inspection fees upon petroleum products. Denying the deduction, the Court said:

"True, the economic burden of the tax is generally passed on to the purchaser, and finally to the consumer. We make no criticism of making invoices disclose the tax burdens of the seller, rendering the public tax-conscious, maybe reacting on legislative bodies when framing tax laws. But in fact and in law these other tax items are legal obligations of appellant, constituting, in economic sense, part of the overhead of the seller's business, as does the tax here sued for. Invoices or bookkeeping cannot change the fact that the purchaser is paying the sale price fixed by the seller, nothing more nor less. They cannot stipulate the purchaser into the position of a taxpayer, and the seller into the position of a tax collector. The tax is payable to the State only, and by the seller. In the absence of statute authorizing such deductions, the "gross sales" must include what the words import, namely, the gross prices paid for the products named when purchased in wholesale quantities as defined by the statute." 12 So.2d at 863.

Appellant seeks to distinguish these and several other cases cited by appellee upon various grounds. In these cases, however, arguments such as those advanced by ap-

pellant here have consistently been rejected by the courts.

In support of its own position appellant relies almost exclusively upon the case of *Madison Surburban Utility District of Davidson County v. Carson,* 191 Tenn. 300, 232 S.W.2d 277 (1950) which has previously been discussed. We do not find that case dispositive with respect to appellant's contention that the incidence of the Tennessee sales tax rests upon the customer and not upon the vendor. In the last analysis this is the essence of the appellant's argument in this case.

 We also find unpersuasive appellant's contention that the amount of the sales tax which it is required to pay is not "derived from intrastate business" as defined in the levying statute, T.C.A. § 67–4–407. The sales tax is imposed upon the vendor for the privilege of engaging in business, and the amount thereof represents a part of its total revenues from engaging in that business, regardless of whether it separately itemizes that tax in its billing or not. As pointed out by the appellee, the amount of the retail sales tax is clearly part of the gross revenues of the appellant. Its liability therefor is not different from liability for other taxes imposed upon it for the privilege of engaging in business, or upon its property. This is one of the many costs of doing business in the state and, in our opinion, is part of the tax base upon which the gross receipts tax is levied.

We have carefully considered all other issues raised by appellants and amici curiae but do not find any of them to warrant reversal.

The judgment of the Chancellor is affirmed at the cost of appellant.

COOPER, BROCK and DROWOTA, JJ., concur.

FONES, C.J., files dissenting opinion.

FONES, Chief Justice, dissenting.

I respectfully dissent.

In spite of the apparent unequivocal definition of gross receipts in T.C.A. § 67–4–301, T.C.A. § 67–4–302 requires the taxpayer to report only gross receipts "from business." No taxpayer is in the business of selling taxes and therefore is not required to report how much tax has been collected. It follows that under my interpretation of these statutes no tax is due the State on the amount of tax collected.