**MCI TELECOMMUNICATIONS CORPORATION, Plaintiff/Appellant,**

v.

**Dudley TAYLOR, Commissioner of Revenue of the State of Tennessee, and the Department of Revenue of the State of Tennessee, Defendants/Appellees.**

Court of Appeals of Tennessee,
Middle Section.

Aug. 16, 1995.

Permission to Appeal Denied by the
Supreme Court Dec. 18, 1995.

Douglas A. Richards, MCI Telecommunications Corporation, Washington, DC, Everett B. Gibson, Danton Asher Berube, Memphis, for Plaintiff–Appellant.

Charles W. Burson, Attorney General & Reporter, Joe C. Peel, Assistant Attorney General, Nashville, for Defendants–Appellees.

### OPINION

CANTRELL, Judge.

MCI Telecommunications Corporation attacks, on equal protection grounds, the telephone gross receipts tax as it was applied prior to its repeal in 1989. The issue is whether the state discriminated against long distance carriers handling calls between Local Access and Transport Areas by applying a different standard to their receipts than to the receipts of local exchange carriers handling long distance calls within a single Local Access and Transport Area. The Chancery Court of Davidson County rejected MCI's argument. We affirm.

### I.

After the 1984 divestiture of local operating companies from American Telephone & Telegraph Company, the Federal Communication Commission divided the country into geographical areas called Local Access and Transport Areas (LATAS). There are five such areas in Tennessee, roughly comprised of the areas around the four largest cities and the Tri–Cities area in upper East Tennessee.

Within each LATA there may be two or more companies (e.g. South Central Bell, GTE, United Intermountain) providing local service. These companies are called local exchange companies. Thus, when a customer places a long distance call within the LATA, the service may involve two providers, the company operating where the call originates and the company operating in the area of the number called. Each company is entitled to compensation for the use of its system. To determine what each company gets paid, the local exchange companies have entered into joint service agreements setting the respective charges and providing that the company where the call originates will bill and collect the toll. The collecting company then pays the other company's part of the toll to a plan administrator, which makes a monthly settlement with each of the participants.

The local companies do not show the entire toll on their books as part of their gross receipts. Historically, the Commissioner of Revenue has assessed the gross receipts tax only on the receipts shown on the companies' books.

After divestiture, local exchange companies were not allowed to handle inter-LATA long distance calls. As a consequence, a long distance call from one LATA to another involves yet another entity, the long distance carrier. Long distance carriers, such as MCI, provide the link between LATAs, but the service involves a local exchange company's system on each end of the call. The charges MCI pays for these services are not set by private agreement, as in the case of long distance calls within a LATA, but are set by the PSC, and are called access

charges. MCI records on its books the full amount charged for the long distance call and then shows the access charges paid to the local exchange company as an expense. When MCI reported its gross receipts to the commissioner, it deducted the amounts paid in local access charges. The commissioner, however, assessed the gross receipts tax on the entire amount shown as receipts on MCI's books.

## II.

The gross receipts tax for the years in question were collected under the authority of Tenn.Code Ann. § 67–4–407[1] which provided:

> Each person operating a telephone business for the transmission of messages or conversations within this state or operating the apparatus necessary to communicate by telephone, and each person operating a telegraph company in this state or operating the apparatus necessary to communicate by telegraph, shall for the privilege of doing such business pay to the state for state purposes an amount equal to three percent (3%) of the gross receipts derived from intrastate business in this state.
>
> (1) Such gross receipts shall include all rentals and other similar charges and shall include all tolls received from business which both originates and terminates in this state.

Gross receipts were defined in Tenn.Code Ann. § 67–4–301(a) as:

> "Gross receipts" for the purpose of taxes administered under this part, means total receipts before anything is deducted, but does not include receipts from the incidental business when such incidental business, if separately carried on, would not be subject to a tax measured by gross receipts under the provisions of this part, part 2, or parts 4–6 of this chapter.

 MCI does not assert that the commissioner misapplied the statute in taxing it and other long distance carriers. By its plain terms the statute imposed a tax on the gross receipts of a telephone company, "before anything is deducted." MCI instead bases its equal protection claim on the fact that the commissioner did not collect the tax on the total amount collected by local exchange companies from their customers for intra-LATA long distance service.

 The United States Constitution prohibits the states from denying the equal protection of the laws to any person within the state's jurisdiction. U.S. Const.Amend. XIV, § 1. "The right of equal protection is violated ... when those similarly situated are unequally burdened." *MCI Telecommunications Corp. v. Tracy,* 84 Ohio App.3d 465, 616 N.E.2d 1212 (1992). With respect to taxation, this constitutional provision prohibits states from discriminating against some taxpayers by subjecting them to taxes not imposed upon others of the same class. *Allegheny Pittsburgh Coal Co. v. County Comm'n,* 488 U.S. 336, 109 S.Ct. 633, 102 L.Ed.2d 688 (1989).

The commissioner argues, first, that the tax collected from MCI and from the local exchange companies is based entirely on the books and records of each. MCI shows on its books a receipt of the entire amount billed for the inter-LATA long distance call, while the local exchange company does not record on its books the amount billed for the intra-LATA long distance call. What shows up on the local exchange company's books is only the amount earned by the use of that particular company's services, according to the prior agreement between the two parties.

We admit that is a difference. But we think it is purely an artificial difference—a paper difference depending entirely on the method of accounting used by the taxpayers. While there are some cases holding that unequal tax treatment based on different methods of accounting are constitutional, *MCI Telecommunications Corp. v. Tracy,* 84 Ohio App.3d 465, 616 N.E.2d 1212 (1992), we do not think different methods of accounting can be the basis for a different treatment of companies similarly situated.

 In Tennessee one cannot avoid paying a gross receipts tax by calling the receipt something else. In *South Central Bell Telephone v. Olsen,* 669 S.W.2d 649 (Tenn.1984), our Supreme Court held that the retail sales

---

1. The telephone gross receipts tax was repealed by Chapter 312 of the Public Acts of 1989.

taxes collected by the company were part of the company's gross receipts for tax purposes. The company had put the sales tax collected in a separate account for accounting purposes, and said it was merely acting as a collection agent for the state. The Court, however, said the broad definition of gross receipts in the statute covered the sales tax collected from the company's customers. The Court found support for its holding in the fact that the sales tax is levied on the vendor and only incidentally is the economic burden passed on to the vendee. Thus, the company was collecting from the retail customer part of the company's cost of doing business.

Next, the commissioner advances the argument that MCI and the local exchange companies are indeed differently situated because the local companies have a shared revenue agreement with their counterparts within the LATA while MCI does not have a shared revenue agreement. Under this view of the relationship of the parties, the local operators are indeed acting only as the collecting agents for each other. The revenue belongs to both companies according to their prior agreement and each company may record as a gross receipt only its share of the long distance toll.

On the other hand, MCI purchases services from the local operating companies for which it pays a regulated access charge set by the PSC. In our view the access charge is more like a merchant's payment for the goods he sells. It is, therefore, one of the costs of doing business. MCI is not the collecting agent for the local companies.

We think MCI's argument fails because it and the local operating companies are not similarly situated for equal protection purposes. We, therefore, affirm the lower court's decision and remand the cause to the Chancery Court of Davidson County for any proceedings that may become necessary. Tax the costs on appeal to the appellant.

TODD, P.J. (M.S.), and CRAWFORD, J., concur.